**FILED**

SEP 3 0 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

GUADALUPE R. GONZALEZ )
1819 Ben Hogan Drive )
El Paso, TX 79935, )
)
      Plaintiff, )
)
    v. )   Case No. _____
)
ALBERTO GONZALES )   JURY TRIAL REQUESTED
Attorney General )
U.S. Department of Justice )
Room 5111, Main Justice Building
10th and Constitution Ave., N.W.
Washington, DC 20530,

      Defendant.

CASE NUMBER  1:05CV01934

JUDGE: Emmet G. Sullivan

DECK TYPE: Employment Discrimination

DATE STAMP: 09/30/2005

**JURY ACTION**

### COMPLAINT

1.    Plaintiff Guadalupe R. Gonzalez, by and through under-
signed counsel, hereby files this Complaint of discrimination
on the basis of national origin and sex in violation of Title
VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §
2000e, et seq., and Section 102 of the Civil Rights Act of 1991,
42 U.S.C. § 1981a, against Defendant Alberto Gonzales, Attorney
General of the United States, in his official capacity only.
Plaintiff seeks relief for harms caused to her by Defendant's
unlawful discrimination on the bases of national origin and sex
when she was denied selection (a promotion) to the position of
Immigration Judge ("IJ") with the Executive Office for

Immigration Review ("EOIR") of the Department of Justice in November 2004 during the tenure of Attorney General John Ashcroft.    Plaintiff requests an immediate retroactive appointment to the position of Immigration Judge in El Paso, Texas, full back pay and back benefits, compensatory damages, and attorney fees in order to remedy Defendant's unlawful acts.

### Parties

2.    Plaintiff Guadalupe R. Gonzalez, a Hispanic woman of Mexican American origin, is a highly respected, long-term government attorney employed with the U.S. Immigration and Customs Enforcement Agency, U.S. Department of Homeland Security (formerly the U.S. Immigration and Naturalization Service, U.S. Department of Justice), who has an outstanding record of performance and achievement.  She currently serves as the Chief Counsel for U.S. Immigration and Customs Enforcement ("ICE") in El Paso.  Plaintiff has approximately 25 years of experience as a federal attorney, nearly 20 of which she served as District Counsel for the Immigration and Naturalization Service ("INS") and currently as Chief Counsel for ICE in El Paso, Texas.[1]  She

---

[1] Formerly an agency within DOJ, INS transitioned into the newly created Department of Homeland Security ("DHS") in March 2003.  Plaintiff's position as District Counsel transitioned into ICE Chief Counsel.  As INS District Counsel, Plaintiff

resides at 1819 Ben Hogan Drive, El Paso, TX 79935.

3.    Defendant Alberto Gonzales is the Attorney General of the United States and the head of the U.S. Department of Justice.   Mr. Gonzales is sued in his official capacity only. His address is U.S. Department of Justice, Room 5111, Main Justice  Building,   10th   and   Constitution   Avenue,   N.W., Washington, DC 20530.

### Jurisdiction

4.    This   Court   has   jurisdiction   over   this   Complaint because it presents a question of federal law. 28 U.S.C. § 1331.

5.    Specifically, this Court has jurisdiction over this Complaint pursuant to 42 U.S.C. §§ 2000e-5(f)(3), 2000e-16(d), and 1981a.

6.    In   Defendant's   administrative   process,   Plaintiff timely filed her informal EEO complaint in December 2004 and her formal discrimination complaint in April 2005.   In late June 2005, Defendant dismissed Plaintiff's administrative complaint. Having now exhausted her administrative remedies, Plaintiff is

---

represented all INS components on all general legal matters as well as matters before the immigration courts (EOIR).   In her role as ICE Chief Counsel, Plaintiff continues to represent all DHS components — ICE, Customs and Border Patrol, and Citizenship and Immigration Service - in all matters before the EOIR.

filing this Complaint within 90 days of her July 2, 2005 receipt of the Defendant's administrative dismissal notice.

### Facts

7.    Plaintiff Guadalupe R. Gonzalez, a Hispanic woman of Mexican American origin, was denied selection for (and promotion to) two vacant Immigration Judge positions, IJ-0905-01/04, in November 2004.

### Plaintiff Is a Member of a Protected Class

8.    Plaintiff is a member of two protected classes based on her national origin (Hispanic/Mexican American) and her sex (female).  Plaintiff was born and raised in El Paso, Texas.

### Plaintiff Is Superbly Qualified to Be an Immigration Judge

9.    Plaintiff is a member in good standing of the Texas and Michigan bars and is admitted to practice in the U.S. District Court, Western District of Texas; U.S. District Court, Eastern District of Michigan; and the U.S. Court of Appeals, Fifth Circuit.   Plaintiff graduated from the University of Michigan Law School in Ann Arbor, Michigan with a Juris Doctor (J.D.) degree in 1978.  She earned her Bachelor of Arts (B.A.) degree from the University of Texas at El Paso in 1974.

10. Plaintiff entered federal employment in July 1981, nearly 25 years ago, as an Assistant District Counsel for INS

4

in El Paso, Texas.  Her duties included representing the agency

in exclusion and deportation cases before the EOIR.  During this

time, Plaintiff was selected for several details to represent

the agency before the Board of Immigration Appeals (BIA) in

Washington, DC.   She also represented the agency in Equal

Employment Opportunity and Merit Systems Protection Board cases.

Plaintiff was named the District Counsel for the El Paso INS

Office in June 1985, within four years of her arrival at the

agency.

11.  For the next 18 years, from June 1985 until March

2003, Plaintiff served as the INS District Counsel in El Paso,

Texas.  As District Counsel, Plaintiff served as chief counsel

to both the INS District Director and the Chief of the Border

Patrol  Sector  on  matters  related  to  enforcement  and

administration of the immigration and nationality laws.  In her

position, Plaintiff provided advice to all INS and Border Patrol

components, including INS Special Agents, Border Patrol Agents,

Anti-Smuggling Agents, Immigration Inspectors, and Immigration

Examiners on legal issues arising under the Immigration and

Nationality Act ("INA").  Plaintiff also directed and supervised

(a) all litigation under 8 U.S.C. §§ 1186a, 1186b, 1226, 1229a,

5

1256 before EOIR;[2] (b) all employer sanctions and civil document fraud cases under 8 U.S.C. §§1324(a) and 1324(c); (c) cases before the Merit Systems Protection Board conducted pursuant to 5 U.S.C. § 1204; and (d) cases before the Equal Employment Opportunity Commission conducted pursuant to 29 C.F.R. Part 1614.

12. In her capacity as INS District Counsel, Plaintiff served as the primary point of contact on legal issues with the federal and state courts, federal and state governmental agencies, attorneys in private practice, and the media. She acted as the primary liaison to the Office of Immigration Litigation for litigation arising out of El Paso. Plaintiff also provided legal support to the U.S. Attorney's Office for federal district court litigation to which the agency was a party. Plaintiff reviewed and authorized administrative search warrants and reviewed and approved all judicial forfeiture proceedings before commencement of suit in U.S. District Court. As District Counsel, she worked as part of the national INS attorney management team in administering the legal services and

---

[2] All EOIR litigation (whether in exclusion, deportation, or removal proceedings) is also supervised and directed by Plaintiff.

litigation program for the agency on a national level. Plaintiff supervised, and served as the primary rating official for, all agency attorneys and litigation employees assigned to the INS District Counsel's Office in El Paso . As the highest ranking attorney in one of the agency's major and busiest field offices, Plaintiff has had regular and frequent contact, correspondence, meetings, and telephone communications with U.S. officials at high levels, officials of the Government of Mexico, and other visiting foreign dignitaries on a wide variety of immigration issues. Plaintiff has also done extensive public speaking for the agency, including television and radio appearances, and personal interviews with the media when appropriate.

13. Since March 2003, Plaintiff has served as Chief Counsel for ICE in El Paso. To a great extent, her duties as ICE Chief Counsel mirror her previous duties as INS District Counsel noted above. Plaintiff continues in her role as lead agency immigration counsel in El Paso. She now serves as chief counsel to the ICE Special Agent-in-Charge ("SAC") of the Office of Investigations and to the ICE Field Director for Detention and Removal. Plaintiff's responsibilities for supervising and directing all litigation before the EOIR from all the legacy INS

7

components have been absorbed into her new position as ICE Chief Counsel.

14. ICE Counsel (formally known as the ICE Office of the Principal Legal Advisor) has been designated by statute with responsibility for all Department of Homeland Security litigation before the EOIR. The INS's transition into DHS has resulted in greater local autonomy for the Chief Counsels; therefore, Plaintiff now holds expanded agency responsibility for appeals to the Board of Immigration Appeals from cases arising in El Paso. She supervises and serves as the approving official for all performance ratings of agency attorneys and litigation employees assigned to the Chief Counsel's Office in El Paso.

15. For the previous 13 years, since June 1992, Plaintiff has also held a rather unusual dual position within the agency (both ICE and INS) as a part-time Special Assistant United States Attorney ("SAUSA"), representing the agency in federal district court on civil matters arising under the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101, et seq.

16. Significantly, Plaintiff's career includes a previous appointment to the Senior Executive Service (SES) in 2001 as INS Deputy General Counsel at the ES-1 level. As a prerequisite to

8

her appointment as DGC, Plaintiff received a formal
certification from OPM's Qualifications Review Board of her
Executive Core Qualifications (ECQs) for appointment to the SES.
This certification is applicable to any future SES level
appointments she may seek and was noted on Plaintiff's
application for the announced El Paso Immigration Judge position
in 2002.

17. Without exception, Plaintiff's performance as INS
District Counsel and more recently as ICE Chief Counsel has been
consistently rated at the Outstanding level.[3] A recipient of
numerous agency awards, Plaintiff was honored as an inaugural
recipient of the INS Commissioner's first "District Counsel of
the Year" award in 1995. She has received numerous sustained
superior performance and achievement awards during her 25-year
tenure as a GS-15 supervisor.

---

[3] The Office of Principal Legal Advisor for ICE converted
to a Pass/Fail rating system for the rating year ending in June
2003. Until that time, a total of 22 years, Plaintiff was under
a DOJ rating system that allowed for performance ratings at the
outstanding level. In each of those years, she received an
Outstanding rating. Under the DHS Pass/Fail rating system,
Plaintiff received recognition for her performance in each year
since its inception. She received a sustained superior
performance award in 2003, a time off award in 2004, and most
recently, a special achievement award in 2005.

9

**Demonstrated Interest in Immigration Judge Position**

18.    In June 2002, Plaintiff applied for the sole Immigration Judge vacancy in El Paso that the EOIR has publicly posted in recent times.   That vacancy was cancelled directly after the closing date, and filled by Immigration Judge Richard Ozmun (white male), who had applied for and accepted a position in Los Angeles but was granted an almost immediate "transfer" to El Paso.

19.   When two Immigration Judge vacancies in El Paso occurred in 2004, the EOIR neither publicly announced them nor contacted Plaintiff regarding her continued interest in an IJ position prior to filling the positions.    In surprising contrast, however, the EOIR contacted Robert Hough and Thomas Roepke, both non-Hispanic white males, regarding their interest in an IJ position in El Paso.   Upon confirming their interest, they were interviewed by phone and offered the appointments. In contrast, Plaintiff was never contacted by the EOIR and never offered the opportunity to interview despite the fact she had clearly indicated her interest in obtaining an IJ position in her hometown of El Paso by submitting a timely application for the 2002 vacancy, the most recent one that was publicly posted for El Paso.

10

### Normal Procedure Is a Competitive Announcement

20.    The DOJ has four Immigration Judge positions in El
Paso.  The November 2004 selections "backfilled" two vacancies
in El Paso created by the departure of one IJ and the transfer
of another.

21.  The EOIR describes the Immigration Judge position as
follows:

> The duties of the Immigration Judge include presiding
> in formal quasi-judicial hearings. Proceedings include
> but  are  not  limited  to  deportation,  exclusion,
> removal, recission, and bond.  The Immigration Judge
> makes  decisions  that  are  final  unless  formally
> appealed.   In connection with these proceedings, an
> Immigration  Judge  exercises  certain  discretionary
> powers as provided by law, and is required to exercise
> independent judgment in reaching final decisions.

The listed qualifications call for a minimum of seven (7) years
of post-bar legal experience equivalent to the GS-15 level in
Federal  Service.   Additional  qualifications  require  that
applicants  must  possess  three  or  more  of  the  following:  1)
Knowledge of the immigration laws and procedures; 2) Substantial
litigation experience preferably in a high volume context; 3)
Experience  handling  complex  legal  issues;   4)  Experience
conducting administrative hearings; OR 5) Knowledge of judicial

11

practices and procedures.[4]

22.   The Defendant normally posts contemporaneous vacancy announcements but did not do so for the two Immigration Judge positions for which it selected Robert Hough and Thomas Roepke in November 2004.   This was a clear departure from its past practice in hiring Immigration Judges.[5]   In the past, only vacancies filled through the transfer of an incumbent IJ from a different location were not publicly posted for competition by DOJ's EOIR.

23.   By contrast, in 2004, the Office of the Attorney General in the District of Columbia provided DOJ's EOIR with a preselected referral list of candidates, of whom two (the two selectees) were interviewed and referred back to the Attorney General for approval.  The method of selection used by Defendant

---

[4] These requirements and qualifications have been listed on all recent DOJ vacancy announcements for Immigration Judge including the June 2002 announcement for El Paso that was subsequently cancelled.

[5] The DOJ posted only two Immigration Judge vacancy announcements in 2004, numbers 04-0038 and 04-0039, for Detroit and San Francisco, respectively.  The rest of at least eight selections announced in November 2004, including the two at issue here, were therefore apparently accomplished through the Attorney General's ("AG") direct appointment authority without benefit of contemporaneously advertised vacancies.  All of former Attorney General Ashcroft's direct appointees, named in November 2004, were white males.

for El Paso, however termed, clearly failed to yield the "short list" that would normally have resulted in a non-discriminatory vetting of all potential appointees based on job-related qualifications. As such, Defendant used the direct appointment method for El Paso Immigration Judge as a pretext to discriminate against Plaintiff in favor of non-Hispanic white males.

### By Using His Power of Direct Appointment, the Attorney General Was Able to Exclude Plaintiff from the Referral List

24. During the EEO administrative process, Defendant alleged that he filled the two Immigration Judge positions in El Paso pursuant to the Attorney General's (AG) direct appointment authority under 5 C.F.R. § 6.3(a), which allows the head of an agency to fill excepted positions by the appointment of a person without civil service eligibility or competitive status, and under 8 U.S.C. § 1104(b), which vests the AG with authority to appoint Immigration Judges. Plaintiff was never contacted by the DOJ as a "highly qualified" candidate prior to the development of the AG's referral list and the AG's direct appointments in November 2004 and never given the opportunity to interview for either of the two El Paso IJ positions.

13

## Plaintiff's Non-Selection

25.  In November 2004, Defendant announced its selection of two ICE attorneys, Robert Hough and Thomas Roepke, both white males, for the positions of Immigration Judge in El Paso. Plaintiff was excluded from the referral list of four "finalists" sent out by the AG's office in the District of Columbia to Chief Immigration Judge Creppy as potential appointees for El Paso, despite its inclusion of two ICE attorneys junior in rank to the Plaintiff, one of whom (Mr. Hough) was her direct subordinate.

26.  At the time of the November 2004 selections, Plaintiff, a GS-15/10 was senior in GS rank within ICE to both of the white male selectees, had greater experience practicing before the EOIR, and greater legal expertise with diverse and complex immigration issues than either selectee. The EOIR interviewed Messrs. Hough and Roepke from the referral list as the two candidates with "the most experience" while denying Plaintiff any comparable acknowledgment of her qualifications for the two appointments. The two white male candidates were selected by the AG's office to fill the vacancies.

27.  In the absence of both a contemporaneous vacancy announcement and any formal register from which to make direct

14

appointments, the EOIR's method of vetting applicants is clearly pretextual. Plaintiff was not one of the four attorneys named on the referral list that the AG's office sent to Chief Immigration Judge Creppy for the El Paso positions.[6] Judge Creppy interviewed two applicants from the AG's referral list and referred their names back to the Agency for selection. Given the ICE attorney hierarchy, the selection of two lesser ranking ICE attorneys while bypassing their boss, in and of itself, raises questions regarding preferential treatment.

### Pretext

28.    Plaintiff's legal experience, under required qualifications Nos. 1-2, as described above in ¶ 21 supra, was demonstrably superior to those of Robert Hough and Thomas Roepke. Plaintiff's role as Chief Counsel in El Paso since 1985 and her dual role as a civil SAUSA for the agency enabled her to master the breadth of issues in immigration law. Plaintiff demonstrated superior knowledge in handling matters involving deportation, exclusion, removal, rescission, and bond issues, the particulars noted in Defendant's description of the

---

[6] The fact of Plaintiff's exclusion from the AG's referral list was noted in the EEO Counselor's Report received by Plaintiff in April 2004 after she filed her formal discrimination complaint.

Immigration Judge position.

29.  In 2004, Mr. Hough served as a staff attorney under Plaintiff's supervision in the position of Assistant Chief Counsel, and Thomas Roepke served as criminal prosecutor for ICE on federal immigration violations.  Plaintiff was one of 25 ICE Chief Counsels in the country.  Chief Counsels supervise all ICE field attorneys in the respective field offices.  The difference between Plaintiff's qualifications and the qualifications of the two white male selectees is so great as to give rise to an inference that Defendant's asserted reasons for the selection are pretextual.

30.  At the time of his selection, Robert Hough (non-Hispanic white male) held the position of GS-14/7 Assistant Chief Counsel, a subordinate on Plaintiff's staff in El Paso. Selectee Hough did not have strong or relevant qualifications for the position of Immigration Judge at the time of his selection.    Mr. Hough did not meet the requisite minimum qualifications for the position of Immigration Judge at the time of his selection because he did not have at least one year's experience at the GS-15 level.  Mr. Hough's experience in his full-time position as a GS-14 staff attorney with the agency failed to provide him the level of experience necessary to meet

16

this standard. In comparison, Plaintiff had 24 years of experience with the agency, 21 of which were in a GS-15 supervisory capacity.

31. Plaintiff had been Mr. Hough's primary rating supervisor since 1990 and is, therefore, intimately familiar with his duties, experience, and performance. Mr. Hough's record as an agency attorney was unremarkable. He never received either an outstanding performance rating or performance award during his tenure with the agency, and was routinely surpassed by his peers in the Chief Counsel's Office in obtaining important assignments. His record stands in stark contrast to Plaintiff's exceptional record with the agency. Thus, at the time of the November 2004 selections, Plaintiff had qualifications plainly superior to those of Robert Hough for the position of Immigration Judge in El Paso.

32. At the time of his selection to Immigration Judge, Thomas Roepke (non-Hispanic white male) was a GS-15/4 Special Assistant United States Attorney (Criminal) for ICE in El Paso. Mr. Roepke was under the professional supervision of the U.S. Attorney's Office. However, as ICE Chief Counsel, Plaintiff was Mr. Roepke's primary rating supervisor and was responsible for oversight of his SAUSA activities on behalf of the agency. In

17

his capacity as a criminal SAUSA, Mr. Roepke, nonetheless, had no personal experience with immigration court proceedings. On information and belief, he did not attend his first EOIR hearing until after his selection as IJ. His expertise was significantly less relevant to the breadth of substantive legal, procedural, and regulatory issues pertaining to immigration law than Plaintiff's. Mr. Roepke's duties as a criminal SAUSA only infrequently involved issues pertaining to immigration court proceedings, on which he usually collaborated with Plaintiff or members of her staff in the Chief Counsel's Office to resolve. Thus, at the time of selection, Plaintiff had qualifications plainly superior to those of Mr. Roepke for the Immigration Judge position.

33. Given her long and outstanding performance record as the El Paso area's highest ranking immigration attorney, Plaintiff's demonstrated knowledge of immigration law and procedure was clearly unrivaled by either of the non-Hispanic white male selectees. Plaintiff's knowledge was also acquired at levels clearly above that of Robert Hough who served under Plaintiff for many years. Moreover, unlike Thomas Roepke, a criminal SAUSA, Plaintiff's long-time experience as a SAUSA responsible for federal civil litigation arising under Title 8

18

was precisely relevant to the position of Immigration Judge.

34.  Under Plaintiff's supervision and direction, her office routinely completes over 5,000 EOIR cases annually, the majority against illegal aliens. Due to the location of a major ICE detention center in El Paso, Plaintiff deals daily with complex custody issues involving diverse nationalities. Plaintiff also individually, or in collaboration with Office of the Principal Legal Advisor, the attorneys in Washington, Office of Immigration Litigation, or the U.S. Attorney's Office, directs litigation strategy on hundreds of removal, Board of Immigration Appeals, federal district court, and circuit cases annually.  Given her significant role as Chief Counsel, Plaintiff is often called upon to exercise discretion and independent judgment on diverse and important cases and legal issues within her responsibilities. In comparison, while Thomas Roepke has substantial litigation experience, he has not had the experience of supervising voluminous litigation before the immigration courts, a role unique to the Chief Counsel position.[7]  In contrast, Robert Hough's experience before the

---

[7]  The Chief Counsel positions provide incumbents with incomparably valuable and relevant experience in preparing individuals for Immigration Judge positions. Not surprisingly, therefore, ICE Chief Counsels have enjoyed great success as

EOIR had been almost exclusively on routine immigration cases at the staff level.

35. Plaintiff has demonstrated superior qualifications handling complex legal issues called for under qualification No. 3. By virtue of her significant responsibilities, Plaintiff has extensive experience identifying, negotiating, and resolving diverse and complex legal issues. She authorizes all Department of Homeland Security appeals to the Board of Immigration Appeals from cases arising in El Paso, determines strategies on novel and high profile issues and cases, and collaborates with the Office of the Principal Legal Advisor, Office of Immigration Litigation, and DOJ attorneys on legal issues before the federal and circuit courts in which ICE (and previously INS) is a party. In their capacities as Assistant Chief Counsel and criminal SAUSA, respectively, Robert Hough and Thomas Roepke dealt

---

candidates for IJ positions. Certainly, this is true when competing with subordinates from their own staffs. However, in contrast to Plaintiff, the only other ICE attorneys named as IJs in November 2004 were both Chief Counsels at their respective locations, George Katsavalis in Chicago and Marsha Nettles in Detroit. Katsavalis, a non-Hispanic white male, had been Chief Counsel in Chicago less than three years at the time of his appointment as an IJ. Marsha Nettles in Detroit had a similar background. Importantly however, Ms. Nettles, an African American woman, was competitively selected pursuant to a vacancy announcement for IJ in Detroit (EOIR No. 04-0038), and not chosen pursuant to a direct appointment by the AG.

primarily with issues at the non-supervisory level on their assigned cases.

36.  Plaintiff had also demonstrated superior knowledge of judicial practices and procedures called for under qualification No. 5.[8]  At the time of the November 2004 IJ selections, Plaintiff had 13 years experience as a part-time civil SAUSA for the agency.  In that capacity, she has acquired a sound knowledge of judicial practices and procedures, including those pertaining to habeas challenges brought pursuant to the provisions of 28 U.S.C. § 2241, eligibility for relief from removal, statutory construction of provisions defining aggravated felonies under the INA, and the continuing jurisdiction of the federal courts once removal has been effected, among others.  Plaintiff represented the agency directly before the federal court as well as in collaboration with the ICE's Headquarters, Office of Immigration Litigation, and the U.S. Attorney's Office.  Her civil SAUSA experience was thus keenly germane to the qualifications for Immigration Judge. Robert Hough has no comparable experience.  Similarly, Thomas

---

[8] Neither Plaintiff nor the selectees had experience under qualification No. 4 regarding the conducting of administrative hearings; therefore, this qualification is not addressed herein.

Roepke's experience practicing before the federal court on criminal cases was less relevant to IJ qualifications than that acquired by Plaintiff in her civil SAUSA capacity over more than a decade.

37.  In sum, selectee Robert Hough did not have strong substantive and relevant qualifications for the position of Immigration Judge.  On information and belief, Mr. Hough, a GS-14, did not even meet the minimum qualification calling for at least one-year experience at the GS-15 level.  Clearly, his experience with ICE and previously with INS did not meet this standard.  Mr. Hough's experience at the supervisory level was greatly exceeded by Plaintiff, who had over 20 years experience as a GS-15 supervisor.

38.   In addition, Thomas Roepke's experience lacked the caliber, breadth, and relevance of Plaintiff's.[9]

39.  Selectees Robert Hough and Thomas Roepke now join two other non-Hispanic white male judges on the immigration court in El Paso, Texas, a city whose population is over 70% Hispanic.

---

[9] At his recent investiture ceremony on September 19, 2005, Thomas Roepke, to his credit, acknowledged his lack of knowledge about the immigration administrative process noting that "I have a long way to go".  In so doing, he also noted the public's right "to have judges that know [the] law".

22

Their promotions also increase the already overwhelming percentage of white males within the Immigration Judge corps around the nation. Based on information and belief, the Defendant (former Attorney General Ashcroft) hired eight individuals for IJ positions in November 2004, including the two selected for El Paso under the AG's direct appointment authority, without the benefit of a public job announcement. All those hired by Defendant through "direct appointment" were white males. It is not an accident that only non-Hispanic white males sit on the immigration bench in El Paso. The result was attained at the expense of Plaintiff, a Hispanic female with superior qualifications.[10]

40. By virtue of her long service, varied experience, and significant expertise as a supervisory and managing immigration attorney, Ms. Gonzalez is exceptionally well qualified to serve as an Immigration Judge. Plaintiff clearly possesses superior qualifications for the position of Immigration Judge over those

---

[10] On information and belief, since 2001, the EOIR has hired only 2 Hispanics for approximately 40 Immigration Judge positions nationwide. Both were already employees of the EOIR in Falls Church, VA at the time they were selected. Further, Plaintiff submits that the same low percentage of Hispanic representation holds true for the IJ corps as a whole, which numbers over 200.

—

of Robert Hough and Thomas Roepke. Despite Plaintiff's superior qualifications, Defendant nevertheless appointed Mr. Hough and Mr. Roepke, while Plaintiff was excluded from any consideration for either of the two positions in El Paso.

### Causes of Action

41. Based upon the facts described in the preceding paragraphs, Defendant unlawfully discriminated against Plaintiff on the basis of her national origin (Hispanic/Mexican American) by failing to select her for one of the two vacant Immigration Judge positions in El Paso, Texas in November 2004 and selecting two less qualified non-Hispanic white Americans instead, in violation of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq. and 1981a.

42. Based upon the facts described in the preceding paragraphs, Defendant unlawfully discriminated against Plaintiff on the basis of her sex (female) by failing to select her for one of the two vacant Immigration Judge positions in El Paso, Texas in November 2004 and selecting two less qualified men instead, in violation of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq. and 1981a.

43. Defendant's use of the AG's direct appointment authority coupled with a candidate referral list has a disparate

24

impact on Plaintiff based upon her national origin and sex, and all other minority and female applicants for Immigration Judge positions within Defendant's EOIR in violation of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq., and 1981a.

### Relief Requested

44. Plaintiff requests the following relief:

    a.    Immediate appointment of Plaintiff to a position as an Immigration Judge in El Paso, Texas;

    b.    Full back-pay, back benefits, and seniority for the period from Plaintiff's non-selection in 2004 to the date of judgment;

    c.    Full compensatory damages to which Plaintiff is entitled;

    d.    An injunction enjoining Defendant, including both the Department of Justice and the EOIR, from failing to post contemporaneous vacancy announcements for all future IJ positions;

    e.    An injunction enjoining Defendant, including both the Department of Justice and the EOIR, from discriminating against Plaintiff, with appropriate notices of the injunction posted in

the work place;

f.    The costs and expenses of this action, including

reasonable attorney's fees; and

g.    Such other relief as the Court deems just and

appropriate.

## Jury Demand

45.  Plaintiff requests a trial by jury on all issues that
are triable by jury.

JOSEPH D. GEBHARDT
(D.C. Bar #113894)
REBECCA M. HAMBURG
(Admitted in CA)
1101 17th Street, N.W.
Suite 807
Washington, DC 20036-4716
(202) 496-0400

September 30, 2005          Attorneys for Plaintiff

26