```
              UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF COLUMBIA

GUADALUPE R. GONZALEZ,          )
                                )
        Plaintiff,              )
                                )
    v.                          )    Civ. No. 05-1934 (EGS)
                                )
ALBERTO GONZALES                )
Attorney General                )
U.S. Department of Justice,     )
                                )
        Defendant.              )
                                )
```

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS**

Plaintiff Guadalupe R. Gonzalez, by and through undersigned counsel, hereby submits her Memorandum in Opposition to Defendant's Motion to Dismiss, and in support thereof states as follows:

**Statement of the Case**

Plaintiff Guadalupe R. Gonzalez, an Hispanic woman of Mexican American origin, is a senior, high level government immigration attorney who has, since 1981, served with the U.S. Immigration and Naturalization Service, U.S. Department of Justice, now the U.S. Immigration and Customs Enforcement Agency ("ICE"), U.S. Department of Homeland Security. Ms. Gonzalez has an outstanding record of performance and achievement, as determined by her supervisors. Ms. Gonzalez has approximately

25 years of experience as a federal attorney, nearly 20 of which she has served in El Paso, Texas as District Counsel for the Immigration and Naturalization Service ("INS") and currently in the successor positions as Chief Counsel for ICE. Complaint ¶ 2.

Ms. Gonzalez has a longstanding interest in becoming an Immigration Judge, as evidenced by her application in 2002 for the last Immigration Judge position that Defendant advertised for El Paso, Texas. Complaint ¶ 18. The position that she applied for in 2002 was noncompetitively filled by a white male attorney who transferred from California. Id. Next, in 2004, the Department of Justice filled two vacancies for Immigration Judge positions for El Paso. Id. ¶ 19. Instead of advertising these positions, as the Department of Justice has previously done, the positions were filled noncompetitively by direct appointment by then Attorney General John Ashcroft, who selected two of Ms. Gonzalez's junior white male colleagues (one of them her direct subordinate) for the vacancies. Id. ¶ 25. Despite the fact that the Department was on notice regarding her interest through her previous job application in 2002, Ms. Gonzalez was not selected for either position, nor even offered an opportunity to apply for them. Id. ¶ 24. Ms. Gonzalez's outstanding performance record, higher level of immigration law

responsibilities for the government, and greater knowledge of immigration law all made her the superior candidate for these El Paso Immigration Judge positions, and the one who would have been selected but for Defendant's unlawful discrimination in favor of two less qualified white males.  Complaint ¶¶ 28-40.

When she was not selected for the Immigration Judge positions at issue in this case, Ms. Gonzalez timely filed an informal EEO complaint of discrimination.  Ms. Gonzalez filed a formal EEO complaint of discrimination on April 1, 2005. Without conducting any investigation, the Agency dismissed Ms. Gonzalez's formal EEO complaint on June 24, 2005, a dismissal she received on July 2, 2005.  Ms. Gonzalez then filed her Complaint in this Court on September 30, 2005, within 90 calendar days of receiving the Agency's decision dismissing her EEO complaint.

### Plaintiff's Complaint States a Prima Facie Case of Discrimination

Under D.C. Circuit authority, a complaining employee may state a prima facie case in connection with a noncompetitive promotion.  Ms. Gonzalez's Complaint clearly states a prima facie case.  When an employee is not selected for a noncompetitive promotion, this Court has defined the

requirements of a <u>prima facie</u> case as follows:

> 1) she is a member of a protected class, 2) she was qualified for the position she sought, 3) she was adversely affected by the employment decision, and 4) she was rejected under circumstances that give rise to an inference of unlawful discrimination.

<u>Underwood v. District of Columbia Armory Board v. District of Columbia</u>, 58 Fair Empl. Prac. Cas. (BNA) 45; 1992 U.S. Dist. LEXIS 1297 (February 10, 1992) a *4-*8.  In Ms. Underwood's case, the Court found that she had been discriminated against when her supervisor selected an admittedly less qualified woman without competition even though Ms. Underwood had not submitted an application for the acting manager's position at issue. <u>See id</u>.

In this case, it is uncontested that Ms. Gonzalez, an Hispanic woman, is a member of a protected class by virtue of her national origin and her sex.  Likewise, Ms. Gonzalez was clearly qualified — indeed, superbly qualified — for the El Paso Immigration Judge positions at issue in this case.  Nor is it contested that the selectees for the Immigration Judge position were similarly situated employees outside of Ms. Gonalez's protected class: two while male government attorneys whose work she supervised.  Rather, the only question raised by Defendant with respect to whether Ms. Gonzalez has successfully made out

a prima facie case is whether, within the meaning of the law, she "applied" for the position at issue, even though it is impossible to apply for an unknown, noncompetitive vacancy.

In making selections for Immigration Judge positions, the Executive Office for Immigration Review ("EIOR") has two options: competitive selections or direct hire by the Attorney General. See 5 C.F.R. § 6.3(a). Ms. Gonzalez previously applied for an El Paso Immigration Judge position when it was competitively advertised in 2002. Complaint ¶ 19. In making the 2004 selections of two white males for El Paso Immigration Judge, however, the Attorney General chose to use his "direct hire" authority, and thus there was no opportunity to apply. Id. Defendant now argues in a Catch-22 that Ms. Gonzalez's claim for the non-competitive position must fail for lack of an application, and implies that because the appointment is to the excepted service, it is somehow immune from challenge for discrimination under Title VII.  Both contentions are utterly without merit.

This Court has previously held that where an employee was qualified for a vacancy, had expressed an interest in the position, but was not given a chance to apply, the employee could nevertheless satisfy the second prong of a prima facie

5

case.  See Underwood v. District of Columbia Armory Board, 38 Fair Empl. Prac. Cas. (BNA) 1713 (D.D.C. 1985); 1985 U.S. Dist. LEXIS 15435, aff'd in part and remanded in part, Underwood v. District of Columbia Armory Board, 816 F.2d 769 (D.C. Cir. 1987).  The District Court stated that in a case where "applications are not solicited, a prima facie case may be shown if plaintiff was qualified and 'might have reasonably expected selection for promotion.'" Id. at *17 (quoting McCormick v. District of Columbia Armory Board, 554 F. Supp. 640 644-45 nn. 14, 15 (D.D.C. 1982).  On remand, the District Court in Underwood found that, even though Ms. Underwood had not submitted an application at the time that the selection for acting manager of the stadium was made noncompetitively, she was nevertheless subjected to unlawful discrimination, and the Court ordered her to be placed in the stadium manager's position she had sought.  See Underwood v. District of Columbia Armory Board, 58 Fair Empl. Prac. Cas. (BNA) 45; 1992 U.S. Dist. LEXIS 1297 (February 10, 1992) a *4-*8.

Defendant's citation of Stella v. Mineta in support of the proposition that a candidate must file an application is not on point: in that case, unlike this one, the Agency accepted applications and Ms. Stella submitted several applications. 284

F.3d 135, 139 (D.C. Cir. 2002). Thus, Stella clearly does not apply to the instant case, in which no applications were solicited by the hiring authority. Defendant's citation of Hussain v. Principi is frankly bizarre, since Hussain stands for the opposite of the proposition advanced by Defendant. On the page cited by Defendant, the Court in Hussain states: "Courts have generally held that the failure to formally apply for a job opening will not bar a Title VII plaintiff from establishing a prima facie case of discriminatory hiring, as long as the plaintiff made every reasonable attempt to convey his interest in the job to the employer." 344 F. Supp. 2d 86, 96-97 (D.D.C. 2004); but see Defendant's Motion at 5. By applying for the El Paso Immigration Judge position two years earlier when it was advertised, Ms. Gonzalez had made every reasonable attempt to convey her interest in the position. As this Court stated in McCormick v. District of Columbia:

> McCormick was precluded from actually applying for the post of Director of State Education Service because no notice of vacancy was posted. Indeed, no advance warning was given . . . . Thus, intentionally or otherwise, there was not even informal notice that the job held by Moore was to become vacant. <u>In a Title VII case, it is sufficient if the plaintiff "might have reasonably expected selection for promotion under the defendant's ongoing competitive promotion system."</u>

554 F. Supp. at 644 n. 14 (emphasis added) (quoting Pettit v.

United States, 488 F.2d 1026 (Ct. Cl. 1973).  Ms. Gonzalez's Complaint pleads ample facts to show that she would reasonably have expected to be considered and selected whether the positions had been opened to competition or selected through the Attorney General's direct hire authority.

Defendant's implication that somehow the fact that the positions at issue in this case are in the excepted service puts them beyond the reach of the anti-discrimination statutes is simply incorrect as a matter of law, and it would be disastrous as a matter of policy.  See Kizas v. Webster, 707 F.2d 524, 542 n.95 (D.C. Cir. 1983); Castro v. United States, 775 F.2d 399, 402 (1st Cir. 1985).[1]  Ms. Gonzalez does not challenge the authority of the Attorney General to make appointments under his statutory direct hire authority; rather, she challenges the abuse of that authority by John Ashcroft, a white male, to discriminate against a Hispanic woman in order to appoint other white males as Immigration Judges.

---

[1] If Title VII applied only to the competitive service and not the excepted service, then Agencies with the power to make selections either competitively or noncompetitively would simply take refuge from Title VII in the noncompetitive appointment process, and Title VII would become a dead letter in the federal government.

**Plaintiff Should Be Allowed to**
**Bring a Claim of Disparate Impact**

In her formal administrative complaint of discrimination, Ms. Gonzalez identified a specific personnel practice that she was challenging as discriminatory. Ms. Gonzalez stated, "I submit the clandestine 'direct hiring' process used in filling the two El Paso positions was not only discriminatory but in contravention of recognized merit hiring principles." Formal Complaint at 3. Defendant concedes that claims in a Title VII lawsuit that are "like and reasonably related to the allegations of the charge" and "can reasonably be expected to follow the charge of discrimination" are allowable. See Motion at 6. The only case Defendant cites from this jurisdiction, at the end of a string of largely unpublished decisions from other jurisdictions, is one in which this Court found that it was sufficient for the plaintiff to exhaust his administrative remedies by pleading racial discrimination, and that he would be allowed to maintain a theory of disparate impact once he met that requirement. Jones v. Ashcroft, 321 F. Supp. 2d 1, 9 (D.D.C. 2004). In this case, Ms. Gonzalez, who was not represented in the administrative process, clearly described the practice she was challenging — the Attorney General's direct

hire of Immigration Judges — in her formal administrative complaint. This description is clearly "like and related" to her assertion in her District Court Complaint that the direct hire of Immigration Judges is discriminatory because it has a disparate impact on Hispanic females.

Defendant's protest that the majority of its appointments in recent years have been direct appointments, instead of by vacancy announcement, does not help Defendant's case, particularly if, as Plaintiff has alleged, the overwhelming majority of those appointments were non-Hispanic. See Motion at 7, Complaint ¶ 39. Defendant's claim that this is a "legal and legitimate" way to make selections begs the question at issue here: namely, whether this facially neutral practice has a discriminatory effect.

Finally, Defendant claims that Plaintiff has pleaded insufficient statistical evidence to support her claim of disparate impact. However, in her District Court Complaint, Ms. Gonzalez states as follows:

> On information and belief, since 2001, the EOIR has hired only 2 Hispanics for approximately 40 Immigration Judge positions nationwide. Both were already employees of the EOIR in Falls Church, VA at the time they were selected. Further, Plaintiff submits that the same low percentage of Hispanic representation holds true for the IJ corps as a whole,

which numbers over 200. Complaint at 23 n.10. This is most assuredly a sufficient allegation of statistical discrimination to survive a Motion to Dismiss Ms. Gonzalez's claim of disparate impact.

Plaintiff requests oral argument on Defendant's Motion and this Opposition.

                                    Respectfully submitted,

                                      /s/
                                JOSEPH D. GEBHARDT
                                    (DC Bar No. 113894)
                                CHARLES W. DAY, JR.
                                    (DC Bar No. 459820)
                                GEBHARDT & ASSOCIATES, LLP
                                1101 17th Street, N.W.
                                Suite 807
                                Washington, DC 20036-4716
                                (202) 496-0400

February 21, 2006                    Attorneys for Plaintiff