U.S. Department of Justice

# Complaint of Discrimination
*(See instructions on reverse)*

PRIVACY ACT STATEMENT. 1. AUTHORITY- The authority to collect this information is derived from 42 U.S.C. Section 2000e-16; 29 CFR Sections 1614.106 and 1614.108. 2. PURPOSE AND USE- This information will be used to document the issues and allegations of a complaint of discrimination based on race, color, sex (including sexual harassment), religion, national origin, age, disability (physical or mental), sexual orientation or reprisal. The signed statement will serve as the record necessary to initiate an investigation and will become part of the complaint file during the investigation; hearing, if any; adjudication; and appeal, if one, to the Equal Employment Opportunity Commission. 3. EFFECTS OF NON-DISCLOSURE- Submission of this information is MANDATORY. Failure to furnish this information will result in the complaint being returned without action.

**1. Complainant's Full Name**
GUADALUPE REYNA GONZALEZ

Street Address, RD Number, or Post Office Box Number
1819 Ben Hogan Drive

City, State and Zip Code
El Paso, Texas 79935

**2. Your Telephone Number** *(including area code)*
Home 915-594-0081
Work 915-225-1788

**3. Which Department of Justice Office Do You Believe Discriminated Against You?**
EOIR
Office of the Deputy Attorney General
Office of the Attorney General

B. Street Address of Office
EOIR: 5107 Leesburg Pike, Suite 2600
Falls Church, VA 22041

C. City, State and Zip Code
ODAG and OAG: U.S. Dept. of Justice,
950 Pennsylvania Ave., N.W., Washington, DC

**4. Current Work Address**
Office of the Chief Counsel, ICE
1545 Hawkins Blvd., Ste275, El Paso, TX 7992

A. Name of Agency Where You Work
Immigration and Customs Enforcement (ICE), Dept. of Homeland Security

B. Street Address of Your Agency
425 I Street, N.W., Room 6100

C. City, State and Zip Code
Washington, DC 20536

D. Title and Grade of Your Job
Chief Counsel, ICE, El Paso, TX  GS-15 Step 1

**5. Date on Which Most Recent Alleged Discrimination Took Place**

| Month | Day | Year |
|---|---|---|
| 11 | 04 | 04 |

**6. Check Below Why You Believe You Were Discriminated Against?**

☒ Race or Color *(Give Race or Color)* Hispanic
☐ Religion *(Give Religion)*
☒ Sex *(Give Sex)* ☐ Male ☒ Female
☐ Sexual Harassment
☐ Age *(Give age)*
☒ National Origin *(Give National Origin)* Mexican-American
☐ Disability  ☐ Physical  ☐ Mental

☐ Sexual Orientation
☒ Reprisal
☐ Parental Status
☐ Class Complaint

**7. Explain How You Believe You Were Discriminated Against** (treated differently from other employees or applicants) Because of Your Race, Color, Sex (including sexual harassment), Religion, National Origin, Age, Disability (physical or mental), Sexual Orientation, Parental Status, or Reprisal. Do not include specific issues or incidents that you have not discussed with your EEO Counselor. (You may continue your answer on another sheet of paper if you need more space.)

SEE ATTACHED PAGES 1-5

**8. What Corrective Action Do You Want Taken on Your Complaint?**

SEE ATTACHED PAGES 1-5

**9.** A) I have discussed my complaint with an Equal Employment Opportunity Counselor and/or other EEO Official.

| DATE OF FIRST CONTACT WITH EEO OFFICE: | DATE OF RECEIPT OF NOTICE OF FINAL INTERVIEW WITH EEO COUNSELOR: |
|---|---|
| 12 / 17 / 04 | 03 / 19 / 05 |

B) Name of Counselor
Wanda Owens

☐ I Have Not Contacted an EEO Counselor

**10. Date of This Complaint:**
Month 04  Day 01  Year 05

**11. Sign Your Name Here:**
*Guadalupe R. Gonzalez*

**7.)**

My complaint is based on my non-selection for either of two recent positions for immigration judge in El Paso, Texas. I suspect discrimination on the basis of race (Hispanic), gender (female), national origin (Mexican-American), and reprisal for prior EEO activity. Both of the individuals selected, Robert Hough and Tom Roepke, are white males. Both are junior to me in rank within the Immigration & Customs Enforcement (ICE) attorney hierarchy. One (Hough) is subordinate attorney on my staff. The other (Roepke) is a Special Assistant U.S. Attorney for ICE.

As ICE Chief Counsel in El Paso, I rated the job performance of both Mr. Hough and Mr. Roepke immediately prior to their selection. More specifically, as his immediate supervisor, I oversaw and directed the day-to-day work activities of Bob Hough as an ICE Assistant Chief Counsel (ACC) for over 13 years. As such, I am intimately familiar with Mr. Hough's job performance and know not only that I am more qualified than Bob for the position of IJ, but also that Mr. Hough's peers in ICE routinely surpassed him in job performance, many by a significant margin. In addition, unlike myself, Mr. Hough never earned a single job performance award during his tenure with the ICE (or legacy INS) legal program. I am clearly better qualified for the position of immigration judge than Mr. Hough.

Similarly, in my position as ICE Chief Counsel, I also rated Mr. Roepke's job performance as an ICE Special Assistant U.S. Attorney prosecuting criminal immigration violations. While I believe Mr. Roepke's work as a prosecutor was excellent, his experience is clearly much less relevant than my own for the position of immigration judge. In contrast to Mr. Roepke who had no experience litigating before EOIR at the time of his selection, I have personally handled thousands of immigration court cases and supervised thousands more in my 20-plus years as Chief Counsel. In addition, like Mr. Roepke, I also have many years of experience in federal litigation as a result of my service in a dual capacity as a Civil Special Assistant United States Attorney for ICE (and legacy INS) since 1992. Importantly, my federal litigation experience routinely involves review of matters within the jurisdiction of the immigration courts and Board of Immigration Appeals. These matters are directly relevant to the position of immigration judge to a degree clearly exceeding that of Mr. Roepke who has worked exclusively in areas dealing with criminal prosecutions. Thus, I am also better qualified for the position of immigration judge than Mr. Roepke.

By way of further comparison with the two selectees, I have served as the ICE Chief Counsel and previously as the INS District Counsel in El Paso since 1986. During that time I have been the recipient of numerous awards for superior performance as Chief Counsel and District Counsel including the inaugural "District Counsel of the Year Award" in 1995. As noted, I also serve in a dual capacity as an ICE Special Assistant United States Attorney having represented ICE very successfully in civil habeas litigation before the federal district courts for over 12 years. I am one of a handful of ICE Chief Counsels in the nation that holds the dual designation of both Chief Counsel and SAUSA for the agency. In addition, I was previously appointed as INS Deputy General Counsel

(DGC) in the Senior Executive Service (ES-1) in 2001 As a prerequisite to my appointment to the DGC position I received a certification from OPM of my Executive Core Qualifications (ECQs). for this SES appointment. I had also attained a higher GS rank (GS-15/Step10) than Mr. Hough (who was a GS-14) at the time of his selection. In addition, I have also held a GS-15 position since 1986 as contrasted with Mr. Roepke who although a GS-15 at the time of his selection, was promoted to that level much more recently and at my request as his rating supervisor. More importantly, I have served for 20 years in my capacity as ICE Chief Counsel and previously as INS District Counsel. As noted, I have also served as a Special Assistant United States Attorney for the agency since 1992. In 2001, I was named INS Deputy General Counsel. While I chose to forego the SES appointment to remain in El Paso, my selection as the second highest-ranking attorney for the agency speaks authoritatively regarding my qualifications for the position of immigration judge in comparison to those of the selectees. In sum, at the time I was passed over for the position of immigration judge, I had established a reputation for excellence in performance, attained selection as Deputy General Counsel, received numerous performance awards with a regularity exceeding either that of either Hough or Roepke, demonstrated an on-going interest in obtaining an IJ position, and stood alone as the senior ICE attorney in the El Paso area. Despite my qualifications, EOIR proceeded to appoint two subordinate white male attorneys that were clearly less qualified.

Interestingly, ICE Chief Counsels like myself are uniformly deemed highly qualified by EOIR for IJ positions. This no doubt is due to the factors mentioned previously that arguably provide Chief Counsels with incomparably valuable and relevant experience in preparing individuals for IJ positions. Not surprisingly, therefore, ICE Chief Counsels have enjoyed great success as candidates for IJ positions, especially when competing against members of their own staffs. In contrast to my own exclusion from consideration by EOIR for the two El Paso vacancies, the ICE Chief Counsels in Chicago and Detroit respectively were just appointed to IJ positions pursuant to public vacancy announcements. Yet, neither George Katsivalis in Chicago, nor Marsha Nettles in Detroit has a longer or more distinguished record than my own. In filling the El Paso vacancies, however, EOIR apparently placed a greatly diminished value on my own Chief Counsel qualifications, bypassing me and choosing instead Mr. Hough and Mr. Roepke. Given, these facts, it is extremely difficult, to justify EOIR's shunning of my candidacy and ultimate non-selection. Having been refused an explanation on how this occurred, I must conclude that, at minimum, my non-selection was based on discrimination.

The selection process itself was also problematic in important respects. First, EOIR failed to post any job announcement for the two El Paso vacancies. Instead, in November 2004, EOIR simply announced it had selected Mr. Hough and Mr. Roepke. I was never contacted by EOIR as a 'highly qualified' candidate and never interviewed for either of the two positions. Other than Mr. Hough and Mr. Roepke, few if any individuals outside of EOIR in Washington were even aware the selection process for the vacancies was going forward. Clearly, the announcements were a surprise to potential candidates for El Paso. This was due in large part to the fact that EOIR has routinely posted IJ vacancy announcements and their failure to do so in this instance was a clear departure from

EOIR's prior hiring practice for IJs. The practice of "direct hires" is also at odds with the information currently available on EOIR's own website, namely that available job vacancies will be posted. The inscrutable character of the selection process is highly problematic given that the hiring process for federal jobs should be open and transparent, especially for important positions such as that of immigration judge. EOIR not only failed to post the two vacancy announcements but also appeared to conduct the selection and hiring process covertly. Perhaps direct appointments are designed to be covert, but, at minimum, all civil service appointments should be based on merit and fairness. Merit principles require that "[R]ecruitment …be…determined solely on the basis of relative ability, knowledge, and skills, *after fair and open competition which ensures that all receive equal opportunity*." (emphasis mine) I submit the clandestine "direct hiring" process used in filling the two El Paso positions was not only discriminatory but in contravention of recognized merit hiring principles. I further submit that the exclusion of my candidacy alone is prima facie evidence that discrimination occurred.

I believe it is also highly relevant to my claim of discrimination, that both Hough and Roepke are class members in the EEOC case of *Durnford* v. Ashcroft, EEOC Case No. 100-2000-07059X [hereinafter "*Durnford*"], an action brought by 'white males not selected as immigration judges in 1994 and 1995'. Moreover, their selections occurred contemporaneously with then on-going negotiations between plaintiff's representatives in Durnford and DOJ/EOIR. I believe EOIR used their status as class members to give them an unauthorized and discriminatory advantage based on race (white) and gender (male) that resulted in my non- selection for either these two positions. Both Hough and Roepke are receiving substantial monetary awards as a result of the *Durnford* Settlement Agreement. I submit both were also "awarded" immigration judge positions in violation of Title VII despite the fact that awarding of IJ position is NOT a part of the settlement. Up to the time EOIR announced the selection of Mr. Hough and Mr. Roepke on November 8, 2004, EOIR never divulged that it was actively recruiting and interviewing these two *Durnford* class members for the IJ positions.

It is my understanding that during the "selection process", Mr. Hough and Mr. Roepke were contacted sua sponte by EOIR and asked if they were "still interested" in obtaining IJ positions. Both had applied for a prior IJ vacancy in El Paso occurring in 2002. That opening was posted then subsequently cancelled in favor of transferring a newly hired "incumbent" IJ (Richard Ozmun) from the Los Angeles EOIR office. In contrast, I was never contacted by EOIR regarding my interest in obtaining an IJ position despite the fact that EOIR possessed a record of my timely application for that same 2002 IJ vacancy announcement. I submit, that this arbitrary exclusion of my candidacy demonstrates Mr. Hough and Mr. Roepke were given an unauthorized advantage over me in the selection process. In addition, it is also unclear why Judge Ozmun, another white male, was allowed to transfer AFTER the posting of the El Paso position despite the fact that he "competed" only for the opening in Los Angeles. As a result of Judge Ozmun's transfer, the El Paso vacancy for which I had applied for was canceled by EOIR after the closing date. I mention this prior selection of Richard Ozmun for the purposes of establishing what appears to be a pattern of repeatedly excluding my candidacy for vacancies in El

G.R. Gonzalez                                                                                                                    3

Paso and as evidence of reprisal in the latest selections. [These facts were noted in my original submission to EEO.]

Importantly, EOIR effectively ignored the efforts of the EEO counselor to provide me information relevant to the El Paso positions. Beyond citing the general statutory and regulatory provision on "direct hire" authority, EOIR failed to provide me any information regarding the reasons or the process by which EOIR ultimately selected Mr. Hough and Mr. Roepke over me. Importantly, EOIR failed to provide any responses regarding whether I had been discussed by EOIR/DOJ as a candidate for El Paso. The lists of questions submitted by me to the EEO counselor were not addressed by EOIR. In short, EOIR and/or DOJ officials did not "counsel" this matter with me. Therefore, it was impossible to address not only any potential discrimination issues, but also any possible claims of reprisal with EOIR or DOJ officials. In sum, EOIR simply refused to engage in any exchange of relating to my non-selection for the positions in El Paso.

EOIR sole statement on this matter was that these appointments were accomplished through the Attorney General's exercise of authority to make "direct appointment" without benefit of a public announcement. Given the importance of these positions, the use of the methodology of "direct hire" in this context raises issues of abuse of discretion by EOIR and raises questions as to the need or reasons for resorting to this practice in lieu of public announcements. Why were "direct hires" necessary or even justifiable here? This methodology was not only a clear departure from EOIR's prior hiring practices for IJ but, as noted below, it was also disturbingly clandestine. Beyond the issue of the reasons for the hiring methodology employed by EOIR for the El Paso selections, there remains the larger issue of why, despite my obvious and arguably superior qualifications, I was deprived of the opportunity to vie for the position of immigration judge on the merits of my qualifications. The conclusions, I must logically draw from this scenario is that my non-selection is, <u>at minimum</u>, a result of unlawful discrimination.

The EEO Counselor could not provide me with any clear information from EOIR about the identity and rank of the recommending and selecting officials. To this date, I am unclear as to the role of the Chief Immigration Judge, the EOIR Director, the Deputy Attorney General, or the Attorney General in the selection process. I was provided no information regarding which individuals constituted the applicant pool for El Paso or how this pool was determined. I have no information as to what prompted EOIR to change course and use the direct appointment methodology regarding the El Paso positions. EOIR also refused to answer questions as to why and on what basis I was not interviewed or why EOIR apparently concluded I was not a "highly qualified" candidate for the position, but found Mr. Hough and Mr. Roepke to be so. In short, EOIR failed to participate or engage in any measure of interaction or "counseling" of this matter with me. Given this and the facts outlined above, there is evidence my non-selection is the result of reprisal on the part of EOIR and DOJ for my prior EEO activity against DOJ. It was impossible to either address or exclude this possibility during the "counseling" phase of this matter since EOIR refused to "talk" to me.

In sum, I believe EOIR's failure to select me for one of the two IJ vacancies in El Paso was discriminatory because it was not based on factors related to job qualifications. I therefore file this complaint on the matter of my non-selection for the position of immigration judge in El Paso. I believe that my non-selection was a result of discrimination based on race (Hispanic), national origin (Mexican-American), gender (female), and reprisal for my prior EEO activity against DOJ.

**8.)**

1.) I request EOIR post individual vacancy announcements for all future immigration judge vacancies.

2.) I request my immediate appointment to the position of immigration judge in El Paso based on my previous application and known qualifications for the position, plus back pay from February 2005 until the effective date of my appointment, plus attorneys fees.

3.) In the alternative, I request appointment to the next available immigration judge position in El Paso, Texas, plus back pay until the date of my appointment equal to the difference between my salary and the salary of a level IV immigration judge plus attorneys fees, plus damages for any intentional discrimination and/or reprisal by DOJ involved in my non-selection

4.) In the alternative, I request solely monetary damages equal to the difference between my salary and the salary for Immigration Judge level IV through my estimated retirement date, an augmentation in retirement benefits consistent with an IJ appointment commencing in February 2005, plus damages for any intentional discrimination and/or reprisal by DOJ involved in my non-selection