**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| GUADALUPE R. GONZALEZ | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 05-1934(EGS) |
| v. | ) |
| | ) |
| ALBERTO GONZALES, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Guadalupe Gonzalez commenced this action alleging that defendant, Alberto Gonzalez, Attorney General of the United States, discriminated against her based on her gender and national origin (Hispanic/Mexican American) in violation of the Title VII of the Civil Rights Act of 1964 ("Title VII"), *see* 42 U.S.C. §§ 2000e *et seq.*. Pending before the Court is defendant's Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 12(b)(6). Upon careful consideration of defendant's motion, the response and reply thereto, the Court **DENIES** the motion.

**I.    BACKGROUND**

Plaintiff is an attorney for the U.S. Department of Homeland Security in the U.S. Customs Enforcement Agency. Compl. ¶ 2. She has worked as a federal attorney for twenty-five years; first as District Counsel for Immigration and Naturalization Services

1

("INS"), and currently as Chief Counsel for U.S. Immigration and Customs Enforcement ("ICE").[1] *Id.* Plaintiff has extensive experience in immigration and nationality laws, and has received numerous awards and consistent high recognition for her performance in her position. *Id.* at ¶¶ 2, 9-17. At the time the complaint was filed, plaintiff had a GS-15/10 rank. *Id.*

In 2002, Plaintiff applied for an Immigration Judge ("IJ") position in El Paso, Texas, which was publicly posted. *Id.* at ¶ 18. That position, however, was filled by an IJ who transferred from another location. *Id.* In 2004, two IJ positions became available in El Paso. *Id.* at ¶ 19. Neither of these positions were publicly posted and both were filled by white males pursuant to the Attorney General's direct appointment authority under 8 U.S.C. § 1104(b) and 5 C.F.R. § 6.3(a). *Id.* at ¶¶ 19, 23-24. The Attorney General sent a referral list to the DOJ's Executive Office for Immigration Review ("EOIR") and the vacancies were filled by two people from that list. *Id.* at ¶¶ 25, 27.

The two men appointed to the IJ positions had less experience and lower GS rating than plaintiff.[2] *Id.* at ¶¶ 26, 28,

---

[1] INS was previously an agency under the Department of Justice ("DOJ"), but was transferred to the Department of Homeland Security in March 2003. Plaintiff's change in position is a result of this transfer; however, her duties are similar. Compl. p. 2 n.1.

[2] One of the appointees, Robert Hough, was her direct subordinate, and he did not meet the minimum requirements for the position. Compl. ¶¶ 26, 30. Likewise, the candidate appointed to the other IJ position, Thomas Roepke, had less experience overall

30, 32.  In April 2005, plaintiff filed an official EEO complaint alleging discrimination.  This complaint was dismissed for failure to state a claim upon which relief could be granted in June 2005.  Plaintiff filed this action on September 30, 2005, within ninety days of her July 2, 2005 receipt of defendant's administrative dismissal notice. *See* 42 U.S.C.A. § 2000e-5.

In her complaint, plaintiff alleges (1) that she was discriminated against based on her national origin (Hispanic/Mexican American) and gender when the Attorney General failed to select her for appointment as an IJ, but instead selected two white men; and (2) that the defendant's use of his appointment authority has had a disparate impact on plaintiff as well as other minority applicants for IJ positions within the EOIR.

Defendant contends that plaintiff has not established a prima facie case for discrimination under Title VII because the two IJ positions at issue were never posted; therefore, plaintiff did not apply for the positions.  Second, defendant argues that because plaintiff did not claim disparate impact in her original EEO complaint, she is barred from litigating that claim before this Court for the first time.

---

and very little experience with EOIR and immigration issues. *Id.* at ¶ 32.

3

## II.  STANDARD OF REVIEW

The Court will not grant a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief. *Conley v. Gibson,* 355 U.S. 41, 45-46, (1957); *Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1276 (D.C. Cir. 1994). Accordingly, at this stage of the proceedings, the Court accepts as true all of the complaint's factual allegations. *See Does v. United States Dep't. of Justice,* 753 F.2d 1092, 1102 (D.C. Cir. 1985). Plaintiff is entitled to the benefit of all inferences that can be derived from the facts alleged. *Kowal,* 16 F.3d at 1276. The Court must liberally construe the complaint in favor of the plaintiff. *See Jenkins v. McKeithen,* 395 U.S. 411, 421-422 (1969).

## III. DEFENDANT'S MOTION TO DISMISS

### A.   Excepted service positions are subject to Title VII.

Defendant argues that because the two IJ positions at issue are excepted service positions, the manner in which they were filled by the Attorney General is not subject to Title VII.

Civil service employees are either in the "competitive service" or the "excepted service."  5 U.S.C. §§ 2102(a)(1),

2103(a).[3]  Excepted service employees are not subject to the usual competitive process for obtaining federal employment. *See* 5 C.F.R. § 213.101(a).  IJ positions fall under the excepted service category because they are attorneys in the executive civil service, *id.* at § 213.3102, and the Attorney General has the option of appointing an IJ through his appointment authority. *See* 8 U.S.C. §1101(b)(4) (IJ is defined as an attorney whom "the Attorney General appoints as an administrative judge within the Executive Office for Immigration Review").  The plaintiff concedes that when the Attorney General exercises his appointment authority, the IJ position can be filled without a public announcement of the vacancy or a competitive application process.

It is well established that Title VII applies to excepted service positions. *See* 42 U.S.C. § 2000e-16 (extending the statute's protection to federal employees, including employees in executive agencies as defined in 5 U.S.C. § 105). *See also Kizas v. Webster,* 707 F.2d 524, 541-42, n. 95 (D.C. Cir. 1983). ("Title VII's coverage of executive agency employees is comprehensive, reaching excepted service as well as competitive service employees.").  Therefore, the two IJ positions in this case, filled by the Attorney General's appointment authority, are subject to protections under Title VII.  Indeed, if Title VII applied only to competitive service, agencies could easily bypass

---

[3] With the exception of employees in the Senior Executive Service, who do not fall into either one of these categories.

the protections afforded under Title VII by using the appointment process. Because the defendant cannot exercise his appointment authority in a discriminatory manner, excepted service positions, such as that of an IJ, are subject to Title VII.

**B.    Plaintiff has stated a claim of discrimination based on gender and national origin.**

Defendant next argues that plaintiff has not established a prima facie case of discrimination because she did not apply for the open IJ positions. In doing so, however, defendant incorrectly assumes that the standard prima facie elements apply in this case.[5]

In a Title VII case where a position was filled noncompetitively, the requirements of a prima facie case are as follows: 1) plaintiff is a member of a protected class; 2) she was qualified for the position she sought; 3) she was adversely affected by the employment decision; and 4) she was rejected

---

[5]Generally speaking, to establish a prima facie case for discrimination under Title VII, a plaintiff must show that: 1) she belongs to a protected class; 2) she applied and was qualified for an available position; 3) she was rejected despite her qualifications; and 4) the employer continued to seek applicants who were no more qualified than the plaintiff. *See Stella v. Mineta,* 284 F.3d 135, 139 (D.C. Cir. 2002) (*citing McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973)). These elements are not, however, intended to be rigidly applied in all cases. Because "the precise requirements of a prima facie case can vary depending on the context, [they] were 'never intended to be rigid, mechanized, or ritualistic.'" *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512 (2002) (*quoting Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 577 (1978)).

under circumstances that give rise to an inference of unlawful discrimination. *Underwood v. D.C. Armory Board,* No. 83-2843, 1992 U.S. Dist. LEXIS 1297, at *7-*8 (D.D.C. Feb. 10, 1992) (*on remand from Underwood v. D.C. Armory Board,* 816 F.2d 769 (D.C. Cir. 1987)).  A plaintiff's "failure to formally apply for a job opening will not bar a Title VII plaintiff from establishing a prima facie case of discriminatory hiring, as long as the plaintiff made every reasonable attempt to convey his interest in the job to the employer." *Cones v. Shalala,* 199 F.3d 512, 518 (D.C. Cir. 2000) (citing *EEOC v. Metal Service Co.*, 892 F.2d 341, 348 (3d Cir. 1990).  Further, where there was no notice of a vacancy, and therefore, no opportunity to apply for the position, it is sufficient if the plaintiff "might have reasonably expected selection for promotion." *Underwood v. D.C. Armory Board,* No. 83-2843, 1985 U.S. Dist. LEXIS 15435, *(aff'd in part and remanded in part, Underwood v. D.C. Armory Board,* 816 F.2d 769 (D.C. Cir. 1987)).

Plaintiff applied for an IJ position in El Paso in 2002.  In 2004, two IJ positions became available in El Paso.  Drawing all inferences in favor of the plaintiff, the Court is persuaded at this juncture that her previous application for a similar position fairly notified the defendant that she was interested in becoming an IJ in El Paso and would be interested in future vacancies.  Further, having been an exemplary attorney for the

U.S. Department of Homeland Security in the U.S. Customs Enforcement Agency for 25 years, it is reasonable that plaintiff would have expected selection for promotion to an IJ position. Therefore, at this stage of the proceedings, plaintiff has stated a claim of discriminatory hiring based on gender and national origin.

**C.   Plaintiff Has Stated a Claim for Disparate Impact Discrimination.**

Defendant contends that plaintiff has not established a prima facie case for discrimination based on disparate impact because she did not identify a particular policy that has had a disparate impact on a group of individuals with shared protected characteristics.  The Court disagrees.

A prima facie case for disparate impact requires a showing of "policies or practices that are neutral on their face and in intent but that nonetheless discriminate in effect against a particular group." *Anderson*, 180 F.3d at 339 (internal citation omitted).  The Court finds that plaintiff has identified a particular policy that has a discriminatory effect on a particular group--defendant's direct appointment authority. Specifically, plaintiff alleges that the manner in which this policy is executed by the defendant has a discriminatory impact on Hispanic women.  Therefore, plaintiff has stated a claim for disparate impact discrimination at this juncture.[6]

---

[6] The parties disagree as to what is the "normal" practice for appointing IJs. The Court finds that this is precisely the

### D.    Plaintiff Has Exhausted Her Administrative Remedies as to Her Disparate Impact Claim.

Defendant argues that because plaintiff did not raise her claim of disparate impact in her EEO complaint, she should be barred from raising it for the first time before this Court because she has failed to exhaust her administrative remedies. Plaintiff responds that because her disparate impact claim is reasonably related to her disparate treatment claim, she need not exhaust administrative remedies before seeking relief in a federal court.

A plaintiff must exhaust all administrative remedies before bringing a Title VII action. *See Currier v. Radio Free Europe/Radio Liberty, Inc.,* 159 F.3d 1363, 1366 (D.C. Cir. 1998). A Title VII lawsuit is limited to claims "like or reasonably related to the allegations of the charge and growing out of such allegations." *Park v. Howard Univ.,* 71 F.3d 904, 907 (D.C. Cir. 1995).  At a minimum, the Title VII claim must stem from "administrative investigation that can reasonably be expected to follow the charge of discrimination." *Id.*  Further, "the administrative charge requirement should not be construed to place a heavy technical burden on individuals untrained in negotiating procedural labyrinths." *Id*.

In her administrative charge, the plaintiff not only alleged

---

type of factual dispute the Court cannot resolve without a more developed record after discovery.

that she was discriminated against as an individual, but also that the "selection process itself was problematic in important respects." Ex. 2, pp. 3, Pl.'s Opp.  Further, the plaintiff asserts in her EEO complaint that the "clandestine 'direct hiring process'...was not only discriminatory but in contravention of recognized merit hiring principles." *Id*.  Although she did not say in so many words that the "direct hiring process" disparately impacted Hispanic women by putting them at a disadvantage when it came to appointments to IJ positions, it was not necessary for her to do so.  At this stage of the proceedings, if her disparate impact claim is like or reasonably related to the allegations of her administrative charge and grows out of such allegations, *see Park*, 71 F.3d at 907, then the plaintiff has exhausted her administrative remedies.[7]  This the plaintiff has done.  *See also Jones v. Ashcroft,* 321 F. Supp. 2d 1, 9-10 (D.D.C. 2004)(finding

---

[7] Defendant relies on *Woodman v. WWOR-TV, Inc.,* 293 F. Supp. 2d 381, 390 (S.D.N.Y. 2003) for its proposition that failure to exhaust administrative remedies bars plaintiff from bringing a disparate impact claim for the first time in federal court.  That case, however, is factually distinguishable, and the Court is not persuaded to follow the *Woodman* Court.  In *Woodman*, the plaintiff alleged in her administrative complaint that the defendants were motivated by unlawful considerations of her age.  However, the plaintiff did not allege in any manner that the defendants promulgated a neutral policy that had a disparate effect of disadvantaging older employees. *Id*.  Therefore, the *Woodman* Court held that the plaintiff failed to identify a specific facially neutral employment practice and that her disparate impact claim was not reasonably related to her disparate treatment claim. *Id*.  Here, as noted above, the plaintiff did identify in her administrative complaint a particular policy that had a disparate impact on Hispanic women.

that plaintiff's disparate impact claim fell within the scope of his EEO charge, which referred to racial discrimination categorically, because at the administrative stage, plaintiff was not required to specify under which theory of discrimination he was proceedings); *Byrnie v. Town of Cromwell Public Schools*, 73 F. Supp. 2d 204, 220 (D. Conn. 1999) (plaintiff's administrative charge only referred to age and gender discrimination, but because plaintiff need not specify under what theory of discrimination he was proceeding and the conduct complained of would "fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination," plaintiff exhausted administrative remedies as to his disparate impact claim); *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 712 (2d Cir. 1998) (same).  Therefore, the Court concludes that because plaintiff's disparate impact claim is reasonably related to her administrative charge, she has exhausted her administrative remedies.

> **E.    Plaintiff relied on sufficient statistics to assert her claim of discrimination.**

Defendant argues that because plaintiff provided insufficient statistics to support her disparate impact claim, the Court cannot conclude that discriminatory hiring practices were used.

A plaintiff may rely on statistical evidence to show that applicants were hired or promoted in a racial pattern

significantly different from that of the pool of applicants. *See Berger v. Iron Workers Reinforced Rodmen,* 843 F.2d 1395, 1411-1412 (D.C. Cir. 1988) (internal citations omitted). The plaintiff, however, cannot establish a prima facie case with statistics that are so flawed as to be meaningless. *Id.* at 1413. The defendant may also introduce alternative statistical evidence to rebut the plaintiff's claims. *Id.*

Plaintiff alleges that only two out of the forty IJs nationwide are Hispanic. Without providing alternative statistical evidence, defendant argues unpersuasively that plaintiff's numbers are not statistically significant. Further, the defendant has not shown that the statistics provided by Plaintiff are "so flawed as to be meaningless" *Berger*, 843 F.2d at 1411-1412. Therefore, the Court finds that the statistics provided by Plaintiff are sufficient to survive defendant's motion to dismiss at this time.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is **DENIED**. Accordingly, it is hereby

**ORDERED** that defendant shall file an appropriate responsive pleading by no later than **October 2, 2006;** and it is

**FURTHER ORDERED** that the parties file a meet and confer report in accordance with Local Civil Rule 16.3 by no later than **October 17, 2006;** and it is

**FURTHER ORDERED** that an Initial Scheduling Conference is scheduled for **October 31, 2006, at 12:00 PM** in Courtroom 24A.

**IT IS SO ORDERED.**


SIGNED:    **EMMET G. SULLIVAN**
           **UNITED STATES DISTRICT COURT**
           **SEPTEMBER 20, 2006**